**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CASE NO. 3:02CV-499-MO**

EDWIN PARROTT, et al.                                                    PLAINTIFF
and
ERIE INSURANCE COMPANY                                      INTERVENOR PLAINTIFF

V.

                                                                              DEFENDANT/
HOOSIER STATE CONSTRUCTION, INC.                         COUNTERPLAINTIFF/
                                                                 THIRD PARTY PLAINTIFF

V.

ARVIN PLUMBING                                             THIRD-PARTY DEFENDANTS

**MEMORANDUM OPINION**

Two years ago, the intervenor plaintiff, Erie Insurance Company, filed a motion for

summary judgment of its claims that it is not required to indemnify or defend Hoosier State

Construction, Inc., against the claims presented by the Parrotts.  The court denied that motion,

reluctantly, noting that it had been presented with the rare situation in which the court's

obligation to do what is procedurally right in a diversity action leads to what the court believes to

be the legally inappropriate result.

Recently, as this case approached trial, Erie renewed its motion.  Much has changed in

the past two years between the denial of the first motion for summary judgment and the filing of

the second.  First and foremost, more extensive discovery has been taken, which has provided

additional reasons why Erie is not required to provide coverage.  Secondly, the makeup of the

Kentucky Supreme Court has significantly changed, which materially affects this court's

analysis of Erie's arguments.   Accordingly, this court finds Erie's second motion to be well

taken.

## I.

As this court noted in its first opinion regarding Erie's request for summary judgment,

this case arises from a construction dispute.  The plaintiffs hired Hoosier State Construction to

build a commercial building for them in September of 2000.  Hoosier State Construction, as is

common, then hired subcontractors to assist it with the project.  The building initially was

scheduled to be completed by the end of 2000, but construction delays ensued.  The project was

largely completed by the end of July 2001, however.

While construction was ongoing, the plaintiffs became concerned about the quality of the

project, and hired an engineering firm to evaluate it.  That firm identified several areas of

concern, from the size of outside sewer lines, to the depth of water lines, to the quality of the

concrete flooring.  Hoosier State, for its part, denied that the construction was defective, but

blamed any alleged defects on faulty work performed by subcontractors.

The plaintiffs allege in their complaint that the construction of the project was deficient

in several respects, and that Hoosier State Construction misappropriated for its own use funds

designated as payment for a particular subcontractor, and then later wrongfully filed a

mechanic's and materialman's lien against the property.  The plaintiffs consequently sued

Hoosier State for (1) breach of contract (2) negligence (3) fraud and deceit (4) misappropriation

of funds, and (5) slander of title.  They also sought punitive damages and a declaratory judgment

in their favor with respect to the lien that Hoosier State Construction had filed against their

property.

Erie Insurance Company, which was not initially named as a party, requested permission to file an intervening complaint.  Erie had issued a commercial general liability policy to Hoosier State Construction that became effective before the Parrotts' business relationship with Hoosier State Construction irrevocably deteriorated.   Accordingly, the court granted Erie permission to file its intervening complaint, which seeks a declaration that Erie does not owe Hoosier state a duty to defend or indemnify it with respect to the claims alleged in this case.

## II.

The policy in question is a commercial general liability policy which became effective on August 8, 2001, and (in pertinent part) provides coverage for those sums that Hoosier State Construction becomes legally obligated to pay because of "bodily injury" or "property damage," if either is caused by an "occurrence" that takes place *during the policy period*.   (*See* Commercial General Liability Coverage Form CG 00 01 (Ed. 7/98) UF-9708 (the "Policy"), Section I, Coverage A, subsection 1.)  After additional discovery has been taken, notably the depositions of Mr. and Mrs. Parrott, the project manager for Hoosier State, and the plaintiffs' expert witness, David Garber, Erie asserts that coverage is not available because the work complained of in the complaint occurred before the effective date of the policy (*i.e.*, August 8, 2001).

As noted above, Hoosier State Construction had commenced the project approximately ten months earlier, in September 2000, and supposedly completed it two months later. According to the deposition of Ty Sovern, the project manager for Hoosier State, construction was substantially complete by the end of July 2001, and that all of the construction errors complained of by the Parrotts occurred before the effective date of Erie's policy.  *See* Ty Sovern

-3-

Dep. at 126-28, 231, 233, 238.

Hoosier State, for its part, attempts to rebut this argument by referring to the testimony of its expert, David Garber, who testified that, at least with respect to the alleged concrete defects, he does not know the cause of the defects.  With respect to the other alleged construction errors regarding the plumbing, sidewalk, drywall, and gutter work, Hoosier State simply asserts that the work was performed by subcontractors and thus arguably covered by the policy.  It does not take issue with Erie's contention that those construction errors occurred outside the effective period of the policy.

Even if the court construes the available evidence in the light most favorable to Hoosier State, and assuming (for the sake of argument only) that the alleged construction errors do constitute property damage that would otherwise be covered by the Erie policy, the court finds that any such property damage occurred before the Erie policy became effective.  As noted above, Hoosier State has not rebutted Erie's assertions most of the alleged errors occurred prior to August 8, 2001.  The only alleged error that Hoosier State attempted to argue might fall within the policy period was the problems with the concrete flooring.  That being said, Hoosier State did not provide any affirmative evidence that the cracks in the floor were caused by something that occurred after August 8, 2001.  Moreover, if Mr. Sovern's testimony that the concrete was poured in the winter of 2001, and the project was substantially complete by the end of July 2001) is true (which Hoosier State does not contest) all of the possible causes listed by Mr. Garber (*i.e.,* concrete being poured over unstable or wet subgrade, or over dirt; concrete being poured in extreme cold; concrete not being cured properly; load placed on uncured concrete; lack of contraction and expansion joints),  *see* Garber Dep. at 42-45,  would have necessarily occurred

-4-

before August 8, 2001. Thus, the court concludes that there does not exist a genuine issue of material fact with respect to whether any alleged property damage occurred prior to the beginning of the Erie policy period.

### III.

There is also a basis, as a matter of law, for granting Erie's motion for summary judgment. The claims alleged by the plaintiffs are not claims of personal injury or damage to property other than their own. They are claims of faulty workmanship. As the majority of courts have held, the purpose of a commercial general liability policy is not to cover faulty workmanship. *See, e.g., Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 583 (6th Cir. 2001)(listing and describing several such cases) and *Assurance Company of America v. Dusel Builders, Inc.*, 78 F. Supp. 2d 607, 609-10 (W.D. Ky. 1999)(Simpson, J.)(listing and describing several others). As the court noted in its prior opinion, it would be economically inefficient for an insurance policy to protect against risks that appropriate business management could and should control.

Because this is a diversity action, the court in its original opinion was compelled to acknowledge that the Kentucky Supreme Court historically has been expansive in its approach to coverage issues generally, *see, e.g., James Graham Brown Foundation, Inc., v. St. Paul Fire & Marine Insurance Co.,* 814 S.W.2d 273 (1991)(cited by this court as the "best source of guidance"), and therefore determined that the courts of the Commonwealth would at least hold that Erie had a duty to defend.

Kentucky commercial law has continued to evolve since *James Graham Brown* was decided, however. First and foremost, the makeup of the Kentucky Supreme Court has

materially changed, and this court can no longer say with certainty that the current justices would take an "expansive approach" to the interpretation of CGL policies. Were the *James Graham Brown* case directly on point factually and legally, this court might not be inclined to rethink its prior ruling. That case, however, merely shows that the Kentucky Supreme Court was previously inclined to be rather expansive in its approach to coverage issues. It did not definitively rule that it would be expansive if presented with the same facts at issue in this case.

Because Kentucky's precedent is not directly on point, and the general approach to coverage issues articulated in that case may no longer be the mindset of the majority of the sitting justices, and because the majority of courts in this country have held that coverage under a CGL policy is not appropriate for the types of claims alleged by the Parrotts, this court can no longer say, in good faith, that Erie is not entitled to judgment as a matter of law. Accordingly, the court finds that, as a matter of law, it is appropriate to grant Erie's motion.

## IV.

For the reasons stated herein, the court finds that there is no genuine issue of material fact with respect to the determination that the claims alleged by the Parrotts did not occur within the Erie policy coverage period. In addition, this court can no longer say that the courts of the Commonwealth of Kentucky would hold that Erie has no duty to defend or indemnify Hoosier State Construction.

Accordingly, **IT IS HEREBY ORDERED** that Erie's motion for summary judgment (docket no. 87) is **GRANTED**.

DATE:

cc:      counsel of record